FILED

E-FILED
Monday, 21 May, 2018 02:02:21 PM
Clerk, U.S. District Court, ILCD

MAY 21 2018

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Michael Fiorito,
Plaintiff,

Case No. _18-1198_____ (TBD)

v.

Warden Krueger, Ms. Baliss,
Mr. Kursock, Mr. Fardel,
Guard Englemann, John/Jane Doe,
United States of America,
Paul Laird, Mr.Holzapfel
Officer Robinson.

Civil Complaint pursuant to
Bivens v. Six Unknown Federal Agents
and 28 U.S.C. 1331

---

**JURY TRIAL DEMANDED**
**COMPLAINT FOR MONEY DAMAGES**

---

**COMES NOW**, Plaintiff Michael Fiorito, pro se, submitting this Civil Complaint against the defendants for they're multiple violations of his Civil Rights under the United States & Illinois Constitutions.

AFFIDAVIT: I declare under the penalty of perjury pursuant to 28 U.S.C. §1746 that the information contained herein is true and accurate to the best of my knowledge. For information I do not have first hand knowledge of I believe it to be true upon information and belief.

Date: 5/5/18

/s/ _____
Michael Fiorito

PRO SE STANDARD OF REVIEW: "a document filed pro se is to be liberally construed" Erickson v. Pardus, 551 U.S. 89,94 (2007).

Petitioner respectfully requests the Court construe this pleading liberally as Plaintiff is uneducation and not trained in the law. Plaintiff apologizes in advance for his mistakes and deficiencies.

A

## JURISDICTION AND VENUE

1. This is a civil action authorized by Bivens v. Six Unknown Federal Agents, 403 U.S. (1971) to redress the deprivation of Plaintiffs rights secured by the United States & Illinois Constitution. Plaintiff will also seek declaratory relief and an injunction against the BOP (US) and defendants.

2. This Court has jurisdiction pursuant to 28 U.S.C. 2201 and 2202. Plaintiffs request for injunctive relief is authorized by 28 U.S.C. 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. 1331 and 1343(a)(3).

3. The Central District of Illinois is an appropriate venue under Federal and State Law as it is where the events transpired giving rise to this complaint

B

## PLAINTIFF

4. Plaintiff Michael Fiorito is and was at most times a prisoner in the state of Illinois in the custody of the Federal Bureau of Prisons (BOP) at FCI Pekin in Pekin Illinois

C

## DEFENDANTS

1. Warden Krueger: Warden Krueger was at all times referenced in this complaint the Warden at FCI Pekin. Krueger was in control of all operations at FCI Pekin and is/was legally responsible for the safety and welfare of all inmates there. Plaintiff told Krueger of the illegalities and unethical conduct of his employees as outlined throughout this complaint. Krueger was on notice of his employees conduct & he took no action to stop or hinder the other defendants illegal conduct and actions

2. Gregory Kursock: Mr. Kursock worked as a correctional officer at FCI Pekin during all the relevant times outlined in this complaint. Kursock was directly responsible for depriving Plaintiff of his Constitutional Rights and Due Process Rights as outlined throughout this complaint.

2

3. Troy Fardell: was the supervisor of the SIS Department at FCI Pekin at all times mentioned in this complaint & he worked in a supervisory capacity there, he was directly responsible and had direct involvement in the the violations of Plaintiffs Constitutional Rights as outlined here.

4. Ms. Baliss: was the Disciplinary Hearing Officer (DHO) at FCI Pekin during the relevant time periods. She was directly responsible for denying Petitioner his Rights during the disciplinary hearing and for violating Plaintiffs rights under the U.S. & Illinois Constitution.

5. Guard Ms. Englemann:  Ms. Englemann was an officer who, at all times referenced throughout this complaint, worked at FCI Pekin and was directly responsible for violating Plaintiffs Constitutional Rights and helping the other defendants fabricate false disciplinary charges against Plaintiff

6. John/Jane Doe(s): In the event the Krueger takes the position that an assistant reads his correspondence and grievances Plaintiff will add those individual(s) to the list of defendants if/when Krueger makes such a claim

7. United States of America: Plaintiff is also bringing suit against the BOP/ U.S. for various torts committed by the other Defendants such as but not limited to: intentional infliction of emotional distress, negligent infliction of emotional distress,

8. Paul Laird North Central Regional Director of the BOP: he was the regional director during most of the relevant time periods. Plaintiff wrote Defendant Laird several letters outlining the problems with the false investigation & the deplorable conditions in the hole. He never took any corrective action or responded to Plaintiffs letters. If Laird claims he did not read his personal correspondence from inmates then the John or Jane Doe that did will be the defendant in his place. Laird aand or Defendant Doe allowed the incident report to move forward even after Plaintiff alerted him that he was being denied all due process. Laird was in charge of all of the above defendants and he helped formulate the BOP policies. Laird failed to train & supervise the above defendants.

3

9. <u>Captain Holzapfel</u>: At all time this defendant was the captain of security at FCI Pekin & in charge of most of the defendants in this case. Plaintiff told this defendant in writing & personally of the deplorable conditions of the hole and explained the due process violations to him yet he took no corrective action. Plaintiff told this defendant several times to preserve the videos of 3/10/2018 as they would be used as evidence & he failed to take any steps to do so. This defendant failed to supervise the hole & ensure staff were properly following the law and BOP Policy in the treatment of the inmates and Plaintiff. This defendant made several threats against Plaintiff such as to physically harm him; to keep him in the hole for the rest of his incarceration; to see to it Plaintiff was shipped off to a prison located as far away as possible from his family. This defendant tricked Plaintiff into dismissing the civil action he filed against Holzapfel and other staff at FCI Pekin by telling Plaintiff "if you drop that BS lawsuit we'll get you medical attention and get you transferred closer to home" Plaintiff did move to voluntarily dismiss his civil action & none of what this defendant promised transpired.

10. All defendants acted under the color of federal law

11. Except the United States all defendants are being sued in their individual & official capacity

12. Paul Lairds address is: BOP Nrth Cent Reg Office; Tower 2; Suite 800 Kansas City, KS  66101

13. All the remaining defendants address is: FCI Pekin P.O. Box 5000 Pekin, IL 61555

14. Plaintiffs address is: Michael Fiorito #00414-424 FCI Florence P.O. Box 6000 Florence, CO 81226

14 A. <u>Robinson</u> was an officer at FCI Pekin at all times referenced in this complaint who worked in the hole. He knew Plaintiff was in danger but failed to take any action. His address is the same as listed in paragraph 13

D

## SUPPLEMENTAL JURISDICTION

15. Plaintiff is invoking supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to bring Illinois and Minnesota state law claims, state tort violations, violations of state statutes and violations of state administrative law

E

## DIVERSITY JURISDICTION

16. Plaintiff is a resident of Minnesota & invokes diversty jurisdiction to bring his claims pursuant to Minnesota state law

F

## BACKGROUND

17. In February 2015 Plaintiff was housed at FCI Pekin in Pekin Illinois

18. On or about February 25, 2018, Plaintiff saw a white female guard hand an inmate a large unmarked manilla envelope to an inmate in Missouri Unit

19. Plaintiff did not report this to anyone

20. Immediately after the inmate received the envelope from the guard he called Plaintiff into his cell

21. The inmate then showed Plaintiff what was in the manilla envelope that was handed to him by the guard which were blank 1040 forms, an EIN Pamphlet, blank W-2 forms and filing instructions for filing tax returns

22. That inmate asked Plaintiff if he would be interested in helping him file false tax returns for other inmates & people on the outside; that inmate assured Plaintiff he could get them covertly mailed out because the female guard would take them out & mail them for him. Plaintiff declined the offer

23. Several days later Plaintiff revealed the above information to a person he was talking to on the telephone

24. On or about March 3, 2015, after Plaintiffs phone call Defendant Kursock interrogated Plaintiff about the phone call referenced in paragraph 23

25. Kursock had a printout of the telephone conversation

26. Kursokc asked Plaintiff who the officer was who had given the other inmate the large manilla envelope and Plaintiff replied that Kursock already knew the answer to that question

27. Kursock then told Plaintiff he wanted him to sign a statement that it was officer Welsh who gave the envelope to the inmate that contained the tax forms

28. Plaintiff told Kursock he knew it wasn't Officer Welsh and Plaintiff stated he would not implicate Welsh

29. Kursock spent approximately 5 minutes trying to bully Plaintiff into falsely implicating Welsh and told Plaintiff he would suffer and his easy life at Pekin would be over. Plaintiff still refused to implicate Welsh

30. During that interrogation Plaintiff told Kursock he knew it was a blond white female and Kursock knew who the female officer was

31. Kursock then told Plaintiff "if you ever implicate Englemann you will do the rest of your time in the hole and I will see to it that the rest of your time is Hell"

32. Kursock finally said I'll give you some time to think about it. We've been after this nigger for years, why do you care Kursock asked. Plaintiff replied he would not implicate anyone

33. Kursock then told Plaintiff he better reconsider or suffer the consequences

34. 1 week later on 3-17-15 Plaintiff was placed in the hole in cell 215

35. Plaintiff was purposely and carelessly placed in cell 215 with a violent inmate who told the guards not to put Plaintiff in his cell or there would be trouble and problems

36. Plaintiff was sexually assaulted & beaten by that inmate on 3-18-15

37. Plaintiff told c/o Robinson on 3-19-15 that he had been assaulted & c/o Robinson failed to take any action & as a result Plaintiff was assaulted again. Robinson is a defendant in this action as well

38. On or about 3-20-15 Plaintiff asked LT Shears for help & Lt Shears removed Plaintiff from cell 215

39. That day the Captain & Kursock came to the hole & interrogated Plaintiff before he saw anyone from medical or psychology & told Plaintiff he would not be making a PREA complaint or any other type of complaint

40. Duirng that interview Kursock waived a manilla envelope that Plaintiff had never seen before and said this was mailed out by you, Plaintiff denied he mailed that envelope. Holzapfel told Plaintiff unless he had a dick in his mouth he was not sexually assaulted

41. Kursock said recant that you were assaulted and this will go away and waived the envelope in front of Plaintiff. Kursock then said refuse & you'll never leave the hole. Holzapfel screamed expletives in Plainiffs face, threatened Plaintiff with physical harm & told him he would turn into the Hulk if he didn't sign a recantation

42. Out of fear Plaintiff signed the recantation

43. Plaintiff had the presence of mind to send written requests to Fardell, Kursock and the Captain that the video of the morning of 3-10-15 of the gym and mail room be preserved as evidence. Plaintiff also told the defendants this in person. Plaintiff was never released from the hole

7

G

FACTS

44. Plaintiff remained in the hole for 5 months under torturous conditions

45. Kursock & Fardell both interviewed Plaintiff about the incident report they were going to issue him

46. On May 27, 2015, Kursock & Fardell issued Plaintiff an incident report for illegal use of the mail which was alleged to have happened on 3-10-15 1/

47. At every stage Plaintiff requested witness's who would have provided exculpatory testimony on Plaintiff behalf i.e. tha he was in the gym that morning, that Plaintiff did not go to the mail room on the date that the envelope was allegedly mailed. For no penological reason those witness's were never interviewed and never called to Plaintiffs DHO hearing

48. At every level, for months, Plaintiff requested the video of the gym & mail room be preserved so it could be examined by the DHO which would have exonerated Plaintiff. Defendants purposely destroyed that video despite being put on notice that Plaintiff needed that as evidence

49. At every level of the disciplinary proceedings Plaintiff requested to see the alleged evidence that would be used against him and again, for no penological reason, that request was denied at every level

50. On June 25, 2015, Plaintiff saw the DHO Ms. Baliss for a hearing on the shot

51. Defendant Baliss told Plaintiff she treated vague shots like the one issued to Plaintiff like they did in the movie "A Few Good Men" & she stated just because something is not prohibited by a rule doesn't mean you didn't violate the rule

1/ _____

Incident report #2719687

52. Staff that day refused to produce Plaintiffs witness's

53. Defendants Kursock, Fardell and Holzapfel & Englemann refused to produce the evidence being used against Plaintiff for no penological reason despite Plaintiff multiple requests to all of them and Baliss that be be allowed to examine the alleged evidence

54. At every stage of the proceedings Plaintiff requested that Englemann and the African American Male that worked in the mail room the morning of 3/10/15 be called as witness's; staff refused this request

55. Baliss found Plaintiff guilty of the incident report with no  proof and violated Plaintiffs Substantive & Procedural Due Process Rights

56. Baliss took 41 days of GCT from Plaintiff, fined him $50.00.

57. Plaintiff asked Krueger to review the entire report & hearing. Plaintiff outlined the due process violations in an inmate request form he handed to Krueger. Krueger had the authority to expunge the incident report and hold a new hearing.

58. To retaliate against Plaintiff for reporting the illegal conduct of Holzapfel, Fardell, Kursock, and Englemann Krueger had Plaintiff shipped to a higher security more dangerous prison located over a 1,000 miles from Plaintiffs family. Plaintiffs custody score was artifically inflated as a result of the finding of guilty & his custody score has remained inflated ever since, forcing him to be housed at extremely dangerous prisons

59. Plaintiff requested a continuance from Baliss to gather & review evidence and for no penological reason she refused

H

FACTS

60. Plaintiff was transferred to FCI Gilmer on July 25, 2015    2/

61. When Plaintiff arrived at FCI Gilmer he started the administrative remedy process to appeal the false incident report & subsequent erroneous finding of guilt by filing a BP.10 to first the North Central Region & then the BOP Mid Atlantic Region

62. While at FCI Gilmer BOP staff told Plaintiff how defendants Kursock, Fardell, and Englemann created the incident report. This was the first time Plaintiff was able to see the chain of events

63. Plaintiff learned that Englemann falsely stated she was in the mail room that morning at that time on 3-10-15 when the alleged envelope was dropped off. Plaintiff knew that was a lie because that morning an African American male officer was working in the mail room. Englemann that morning was seen in the dining hall and walking around the compound so she could have never seen who allegedly dropped the envelope off

64. Defendants issued the false incident report to undermine Plaintiffs credibility that he saw Engleman give the contraband to the inmate in the event Plaintiff ever decided to report Englemann. The added benefit of the shot for defendants would be to also undermine Plaintiffs claims that he had been assaulted & that defendants Kursock and Holzapfel forced Plaintiff to recant

65. Plaintiff explained all of the facts related to the issuance of the false disciplinary report & the DHO hearing by Baliss. (Administrative Remedy 831522-R3)

66. Eventually Mr. Caraway the Mid Atlantic Regional Director of the BOP sent the incident report back to be reinvestigated

2/ _____
Baliss did not recommend Plaintiff be transferred. Krueger transferred Plaintiff to punish him for filing grievances reporting the misconduct of staff. Prior to this incident report Plaintiff never had any violations of any kind at FCI Pekin & was a model inmate

10

67. After Mr. Caraway told the BOP to reinvestigate the shot defendants Kursock, Fardell and Englemann had 8 **MONTHS** to reinvestigate and re-file a new incident report & they refused to do so due to their violations of Plaintiffs due process rights;they had no desire to issue another false incident report & make more false statements on the record

68. It took many months for the BOP to restore Plaintiffs 41 days of GCT & refund the $50.00 fine wrongly imposed by Baliss

69. Plaintiff had to actually file a civil action against the BOP to get them to restore his good time. See Fiorito v. Warden Saad, No. 2:16cv 36 in the Northern District of West Virginia.

70. But even after the good time was restored and the fine refunded the increase in Plaintiffs custody score remained which Plaintiff continues to fight to this day. As a result of Plaintiffs score being artificially inflated he has had to remain at higher level, more dangerous prisons endangering his safety & welfare

I

FACTS

71. On or about May 1, 2015, Plaintiff filed a civil action against most of the bad actors in this complaint in the Central District of Illinois.

72. On or about May 4, 2015, Plaintiff filed a motion with the Court to preserve the video's of the gym & mail room for the morning of 3-10-15

73. The Defendants purposely taped over those video's that they knew should have been preserved & kept as evidence. Defendants did this to deny Plaintiff access to exculpatory evidence

11

J

FACTS REGARDING NOTIFICATIONS PLAINTIFF PROVIDED TO DEFENDANTS

74. During the 5 months in the hole Plaintiff informed Krueger about the conditions of the hole in person and in writing via inmate request forms. Krueger never took any corrective action

75. The entire time Plaintiff was in the hole he told Krueger about the false invetigation & false incident report & asked Kureger in person & in writing to perserve the video's, ensure Plaintiff was allowed to call witness's & to examine the alleged evidence against him. Krueger never answered any of Plaintiffs written requests and when he spoke to Plaintiff he stated "those were not his problems". Kruegers allowed his employees to committ the illegal conduct outlined throughout this complaint. Krueger was aware of his employees illegalitites yet he took no action to stop them or correct them

76. Plaintiff provided Holzapfel with the same notifications as Krueger & he also took no corrective action and never responded to Plaintiffs written requests and told Plaintiff that his problems were not his concern

77. Plaintiff wrote Laird several letters outlining his complaints against the defendants & the deplorable living conditions in the hole at FCI Pekin and he never took any corrective action. If Laird claims he does not read correspondence from inmates but delegates that task to a lower level employee then the John or Jane Doe that did is a defendant in this case

78. Laird & or the Does allowed Plaintiffs false incident report to move forward even after Plaintiff alerted him/them that he was being denied due process

12

K

FACTS

79. When Plaintiff was in the hole at FCI Pekin he was subjected to the following atypical & significant hardship that is not part of ordinary prison life:

    A. Plaintiff was placed in cells for days without a toilet that flushed

    B. Plaintiff was exposed 6 times to tear gas sprayed at other prisoners that were fighting & was not allowed to decontaminate his cell or clothing & was forced to suffer the after-effects for days

    C. Plaintiff was forced to live on a tier with inmates who were very mentally ill who & who banged on their cell doors night and day & screamed at all hours

    D. Plaintiff was kept in a cell for 5 day with no working shower

    E. Plaintiff was denied medical care for months despite his repeated requests to see somone from the medical department

    F. Officers in the hole purposely moved Plaintiff to the lower tier where there was no heat in the winter causing Plaintiffs Rehumatoid Arthritis to become inflamed causing Plaintiff such pain he could not walk. Holzapfel instituted an illegal order that inmates could not cover up with blankets from 7am until 4 pm. Plaintiff was shivering all day and in pain. Plaintiff disobeyed Holzapfels illegal order & covered up any way one time and the guards came into his cell & took all of his blankets. It was so cold in the cell Plaintiff could see his breath

    G. Plaintiff was forced to sleep on a cell floor for 5 weeks because guards put 2 inmates in the same cell with lower bunk passes. Sleeping on the floor re-injured Plaintiffs serious back problems

    H. Defendants purposely house Plaintiff on the same tier with the inmate who assaulted him allowing that inmate to taunt Plaintiff for weeks causing Plaintiff further emotional distress

LEGAL CLAIMS

I

DENIAL OF DUE PROCESS

80. Plaintiff realleges & incorporates by reference paragraphs 1-79

81. Defendants denied Plaintiff all substantive & procedural due process in relation to the investigation of the incident report, the issuance of the incident report and the hearing where Defendant Baliss wrongly found Plaintiff guilty on June 25, 2015.

82. As outlined in this complaint Defendants denied Plaintiff his due process right to witness's, to examine the evidence, and his reasonable request for a continuance

83. Defendants purposely allowed the videos of the gym & mail room of the morning of 3-10-15 to be lost knowing they would be used as evidence; they did this despite Plaintiffs multiple requests to them and a court order that the video be preserved

84. Plaintiff was entitled to all due process protections as he lost good time and was fined

85. Plaintiff was illegally subjected to 5 months in the hole under circumstances & conditions that were atypical & caused him significant metal anguish and hardship. None of which were part of ordinary prison life

86. Plaintiff is a non-violent offender and the defendants had the option of releasing Plaintiff back to the compound. Prior to this incident Plaintiff had never violated the rules and was a model inmate. Defendants kept him in the hole to deny him the ability to interview witness's & gather evidence for his defense.

87. Defendant suffered various physical injuries and severe emotional distress as a result of Defendants actions

14

## II

### FIRST AMENDMENT

88. Plaintiff realleges & incorporates by reference paragraphs 1-87

89. Most if not all of the defendants illegal conduct was the result of Plaintiffs refusing to falsely implicate Officer Welsh & Plaintiffs filing of valid grievances against staff at FCI Pekin while he was in the hole; all violation Plaintiffs rights under the United States and Illinois Constitution and in violation of BOP Policy and Illinois Administrative Law all violating Plaintiffs First Amendment Right to free speech protected under the U.S. and Illinois Constitutions

## III

### EIGHTH   AMENDMENT
DEFENDANTS ACTIONS , AND FAILURE TO ACT, COMBINED WITH
THE LIVING CONDITIONS OF THE HOLE SUBJECTED PLAINTIFF
TO CRUEL AND UNUSUAL PUNISHMENT

### A

### RETALIATION

90. The retaliation against Plaintiff includes but is not limited to:

1. 5 months in the hole
2. purposely placing Plaintiff in a cell with an inmate staff knew was dangerous
3. Instigating a ficticious investigation
4. Issuing Plaintiff a false incident report
5. Purposely, and without justification, transferring Plaintiff

15

IV

TORT CLAIMS

91. Plaintiff realleges and incorporates by reference paragraphs 1-90

92. The U.S. and Defendants are responsible for the following tort claims under the U.S. and Illinois Constitutions by whatever names they are called:

A. Malicious prosecution

B. False imprisonment

C. Mental & emotional distress

D. Intentional Infliction of emotional distress

E. Negligent infliction of emotional distress

F. Negligence

G. Negligent supervision resulting in injury

H. Negligent training resulting in injury

I. Falsely testifying against an inmate

J. Failure to accomodate Plaintiffs families disabilities by moving Plaintiff so far away from his disabled family members they cannot visit him.i.e. ADA & Rehabilitation Act Violations

K. Abuse of process

L. Defendants Negligent violations of 18 U.S.C. 4042(a)

M. Denial of medical care for injuries Plaintiff sustained at the hand of other staff and inmates at FCI Pekin

93. If Plaintiff is allowed to bring these claims pursuant to Minnesota Law he will do so

94. 28 U.S.C. 2680(h) provides for liability for assault, false imprisonment, abuse of process and malicious prosecution; Plaintiff invokes this statute to obtain damages

16

RELIEF REQUESTED

A. Issue a declaratory judgment that:

    1. Defendants violated Plaintiffs Due Process rights by issuing him a false disciplinary report

    2. That Krueger and Laird failed to take action to curb the due process violations committed by they're employees Englemann, Kursock, Fardell and Baliss

    3. Issue a declaratory judgment Plaintiff was wrongly transferred

    4. That Englemann made a false report

    5. That defendants destroyed video evidence

B. Put Plaintiff back in the same position he was in before this pathetic chain of events took place i.e. return his custody points to normal, transfer him to a prison in Minnesota as his unit team at FCI Pekin was preparing to do before Kursocks and Englemanns illegal conduct

C. Award compensatory damages in the following amounts:

    1. $10,000 jointly and severally against Defendants Kursock, Baliss, Krueger, Englemann, Phardell, Holzapfel and Laird for the punishment, including deprivation of liberty & amenity, and emotional injury resulting from their denail of due process in connections with Plaintiffs disciplinary proceeding;

        By this demand Plaintiff seeks compensatory damages for the loss of privileges and quality of life in his prison living conditions, and loss of the limited liberty enjoyed by all prisoners, resulting from his segregated confinement, in that he was confined for 23 & often 24 hours a day in a cell roughly 50 feet square, and deprived of almost all of his personal property as well as the ability to work, attend educational & vocational programs, watch television, and associate with other prisoners, attend outdoor recreation in a congregate setting with the ability to engage in sports and other congregate recreational activities, attend meals with other prisoners, attend religious services. Plaintiff separately and in addition seeks compensatory damages for the mental and or emotional distress resulting from his prolonged confinement in segragation without due process of law, to which he is entitled because of the physical injuries sustained in his beating and as a result of the deprivation of medical care pled herein

D. Award punitive damages in the amount of $10,000 dollars against each Defendant except the United States

E. Award damages against the United States in the amount of $100,000 dollars for the tort claims listed in paragraphs 92, 93, and 94

F. Grant such relief as it may appear that Plaintiff is entitled

Respectfully submitted,

Date: 5/5/18

/s/ _____

Michael Fiorito



00414-424
Us Courthouse
100 NE Monroe ST
Attn: Clerk of Court
Peoria, IL 61602
United States